UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| KAREN FOSS, MARGARET FOSS, SCOTT FOSS, GERALD FOSS *pro se,*<br><br>Plaintiffs,<br><br>vs.<br><br>KING COUNTY, a political subdivision of the State of Washington, KING CONSERVATION DISTRICT, a special purpose district of the State of Washington , S.H.A.D.O.W group SAVE HABITAT AND DIVERSITY OF WETLANDS, a duly organized Washington non-profit organization; THE SHADOW LAKE BOG FOUNDATION, individuals STEPHANIE WARDEN, JOE MILES, LINDA HOLECEK , MAX PRINSEN,  ERIN WODJEWOSKI  PRINSEN, are all sued in their own individual capacities.<br><br>Defendants,<br><br>_____ | Case No:<br><br>**COMPLAINT FOR**:<br><br>1. **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE (hereafter "RICO") Title 18, United States Code, Sections 1961 through 1968.**<br><br>2. **42 §USC SECTION 1983**<br><br>3. **42 §USC SECTION 1985**<br><br><br>**JURY TRIAL DEMANDED** |

Civil Complaint for Damages

1

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

**COMES NOW**, the above named plaintiffs and by way of claim State:

Dated this_____ day of_____2009

## PARTIES

1.    Plaintiffs' bring this suit for money damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations statute (hereinafter "RICO") Title 18, United States Code, Sections 1961 through 1968 and to put an end to this systematic, long standing and ongoing corruption by individual "NAMED DEFENDANT RACKETEERS" (identified below). These individuals used positions with King County and KCD to purport a perception of "official right" "under color of state law." They admittedly have formed a non-profit organization to partner with King County for the purpose of acquiring Plaintiffs property and designated property around Shadow Lake for a "biodiversity" project.  This claim is based on the legal facts surrounding the NAMED RACKETEERS' unlawful acts to gain control over and acquire the Plaintiffs property. Plaintiffs have come to learn the facts surrounding this case over a period of many years.  The plaintiffs bring this action after much due diligence in investigating and pursuing the truth. Through documents obtained in public disclosure requests and research of the parties involved,  The records show that the NAMED DEFENDANT RACKETEERS  have attempted to fraudulently conceal the facts involving their unlawful Racketeering Activity and

the extent of their deprivation of the plaintiffs Constitutional rights. Additionally, this claim is brought pursuant to United Sates Code Section 42 1983, specifically for violations of due process and equal protection of the law guaranteed by the fourteenth and fifth amendment of the United States Constitution .

**DEFENDANTS**

2. RICO Defendants, STEPHANIE WARDEN, JOE MILES, MAX PRINSEN, ERIN WODJEWOSKI PRINSEN, LINDA HOLECEK, (Hereinafter collectively known as "NAMED DEFENDANT RACKETEERS") have engaged in Racketeering Activities STEPHANIE WARDEN, JOE MILES, MAX PRINSEN, and LINDA HOLECEK are also named in there "official" capacities for the purposes of effectuating the relief requested in this complaint, pursuant to rule 19(a) of The Federal Rules of Civil Procedure.

3. Defendant KING COUNTY is a "local government entity" as defined in RCW 4.96.010(2) and is a subdivision of the State of Washington.

4. Defendant KING CONSERVATION DISTRICT is a special purpose district and political subdivision of the State of Washington, (hereinafter referred to as KCD.)

5. Defendant S.H.A.D.O.W Group (hereinafter SHADOW) is a domestic non-profit organization.

6. Shadow Lake Bog Biodiversity Project, any of its dba's including but not limited to The Shadow Lake Bog Foundation.

**CO-CONSPIRATORS**

7. Individuals named below are named co-conspirators and not defendants as they were directly or indirectly involved with the NAMED DEFENDANT RACKETEERS,

Civil Complaint for Damages

3

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

HOLLY D'ANNUNZIO, JEAN WHITE, SCOTT WALLACE, CONRAD LIEGAL, BOB BRANDO, DAVID T. JONES, and GENE DUVERNOY, the Plaintiffs feel these individuals have a considerable amount of involvement and information about the unlawful activity that has taken place. Plaintiffs reserve the right to add any of these co-conspirators as defendants based on the information they obtain in discovery.

**UNKNOWN PARTIES**

8. Defendants, JOHN DOES 1 through 5 and JANE DOES 1 through 5 are certain individuals whose identities or involvement are unknown and whose actions contributed to the damages incurred by the Plaintiffs.

9. Plaintiffs reserve the right to amend this complaint to name additional parties defendant once the true names or true extent of involvement of these defendants is discovered.

10. To date, the plaintiffs have been prevented from learning all the identities or involvement of individuals.  Plaintiffs have made several requests for public records and have not received information due to the fact that responding government agencies have excluded documents and blacked out information on others.

11. Such individuals would include, but are not limited to, those responsible individuals within the King County government, KCD or SHADOW, those contributors the association-in-fact enterprise formed by the defendants in this case or any other entity or individual who caused or has information about those who caused damages to the plaintiffs.

**JURISTICTION AND VENUE**

12. The Jurisdiction in this matter is predicated by United States Code section 1964(c) and title 28,   United States Code, Section 1331.

Civil Complaint for Damages                          Foss *pro se*
                                                    22417 196th Ave Se
                        4                            Renton, WA 98058

13.   The proper venue for this action is the United States District Court, Seattle, Western District of Washington, predicated by Title 18 United States Code, section 1965.

## BACKGROUND OF FACTS

14. The Plaintiffs were owners of two parcels of land located in South King County. The property was held with other owners as Tenants in Common.  The properties are defined as the "Park" (10.64 acres) and the "Woods" (42.08 acres) and are adjacent parcels on the shoreline of Shadow Lake.  The Plaintiffs currently still own the "Park" property.

15. The Foss family immigrated to the United States from Norway in 1909 and purchased the resort on Shadow Lake.

16. The Foss Resort was successful for many years; it included a dance hall, rental cabins, and a ball field for company picnics.

17. The Foss property was passed down by Aage and Wilhelmina Foss through the laws of descent, with the majority of the estate being inherited by their four children as "tenants in common,"

18. The four children, in turn passed the ownership on to the next generation as "tenants in common."

19. In September of 1999, the majority (97%) of the tenants of wished to divide the property.

20. Carl Foss, deceased, was a professional developer by trade and a 1/6 owner of both the "Park and "Woods" parcels.

21. Carl gained approval from King County DDES for a testamentary subdivision exemption, creating 14 separate lots for the individual owners, 13 of which were to be created in the "Woods" as it was more suitable for residential development and one lot remained on the "Park" parcel.

22.  On 1/11/1999, Preliminary approval for this division was given by King County DDES engineers Raymond Florent and Mike Meins along with the approval of their supervisor, Joe Miles.

23. HOLLY D'ANNUNZIO was a 1/30 owner of the "Woods" parcel through inheritance, she did not have any ownership interest in the "Park" parcel.

24. As part of the conditions of approval King County's JOE MILES was requiring the signature of D'Annunzio for the final approval of the division.  It was not known to the Plaintiffs why D'Annunzios signature was a requirement, when Gerald Foss and Carl Foss were the Executors of the Estates involved and they had both signed in accordance with the Probate.

25. D'ANNUNZIO refused to sign.

26. All of the seven "Park" owners signed the necessary paperwork for separate lot recognition and all other county requirements were met for this application. The county then recognized these lots by requesting a Mylar Map showing the lots from the "Park", with the lots from the "Woods" all together on the woods property, as it was better suited for development.

27. NAMED DEFENDANT RACKETEER, JOE MILES, sent a letter to the family, placing a 90 day deadline or expiration on development approval if D'ANNUNZIO'S signature was not obtained.

28.  In October of 2000, MILES requested an official withdrawal of the application from Carl Foss.

29. On October 16, 2000 Carl Foss, as requested by MILES, submitted a withdrawal letter, stating that the plaintiffs would re-apply when the legal issues were resolved.

30. On March 24, 2000 the Plaintiffs were in court requesting a court ordered signature for D'ANNUNZIO. Soon after, the Plaintiffs filed a partition action in King County Superior Court, Cause No 00-2-06708-9, to achieve partition in kind and to realize the individual ownership that they had inherited.

31. **The Enterprise-**At all material times to this complaint the NAMED DEFENDANT RACKETEERS through their common purpose did form an Enterprise as defined in Title 18 USC section 1961( c ) that was dependant on each RACKETEERS role independently, in having control over the conduct of its affairs that effected interstate commerce. The intent of the Enterprise was to preserve and acquire the plaintiffs' property and other similar property in the Shadow Lake Area. The facts indicate that each of the NAMED DEFENDANT RACKETEERS conducted, controlled and participated, along with other CO-CONSPIRATORS, in the affairs of an Enterprise, **through a pattern of unlawful racketeering activity.** The **common purpose** was the preservation of the Plaintiffs' property and other property in the Shadow Lake area through acquisition.

32. **SHADOW/PRINSEN formed a relationship with KCD-**when MAX PRINSEN was named as the Chairman of KCD. This relationship creates a conflict of interest. MAX PRINSEN and ERIN W. PRINSEN are preserving property through SHADOW around there own personal residence.

33. **SHADOW/PRINSEN/KCD formed a relationship with D'Annunzio** SHADOW (MAX PRINSEN) received a donation of $110,000 from D'ANNUNZIO in 2001 and a relationship was formed. This relationship extended to KCD when PRINSEN became the district chair. This creates another conflict of interest. D'ANNUNZIO' is the party defendant in the Plaintiffs Partition Action and she is receiving benefit from State. A

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

court of equity is not provided when the State is showing undue prejudice.
D'ANNUNZIO made statements and sent e-mails to the Plaintiffs stating that PRINSEN and Shadow were the only ones she would sell the property to.

34. **SHADOW/PRINSEN formed a relationship with King County.** King County helped fund SHADOW through different types of grants, matching funds, promises for conservation futures, and through funds that were earmarked specifically by King County Council for purchasing property on Shadow Lake. PRINSEN was involved with several King County advisory boards and committees.

35. PRINSEN became Chairman of King Conservation District and used this new position of "official right" while under the "color of state law" as a means to gain control, operate and solicit members to help with operations of the Enterprise. NAMED DEFENDANT RACKETEERS are Association in fact members, all in some way, have an effect individually on the Enterprise that exerts control over the path and actions the enterprise will take.

36. During the court case NAMED DEFENDANT RACKETEER, MAX PRINSEN reported erroneously, to a local publication that he was raising funds for the purchase of the plaintiffs' property and was in the process of negotiating with the owners. Plaintiff, Gerald Foss called the paper and let them know that the owners had never negotiated with MAX PRINSEN and the property was not for sale. The publication printed a retraction. PRINSEN was fraudulently reporting that he was working with the owners to purchase the property in order to gain control of it and receive funding to purchase it. He falsely reported these facts and was able to obtain a grant from the Federal Government NAWCA Department of Fish and Wildlife and matching funds from King County, when the property was not for sale.

37. Plaintiffs were later contacted directly by MAX PRINSEN, asking if they would consider offers for the property. Plaintiffs ultimately told PRINSEN they were not interested in selling. Upon review of thousands of documents obtained by their public records request, Plaintiffs learned that on September, 10th 2002, an acquisition meeting was held on the Plaintiffs' property. The plaintiffs did not authorize access to their property and assume that access was done in trespass to land.  Those known to have attended were NAMED DEFENDANT RACKETEERS, LINDA HOLECEK and BOB BRANDO of King County, MAX PRINSEN of the SHADOW, KCD and five other individuals that were not owners.

38.  On May 25th 2003 PRINSEN, through SHADOW presented a purchase and sale agreement to the plaintiffs for $660,000.00. The offer was made contingent on the signing of a real estate contract. All owners rejected this offer. The Plaintiffs learned later, through public requests, that PRINSEN and SHADOW purchased the neighboring parcel to the Plaintiffs property by buying it on a "real estate contract" and paying off the property after receiving funds from King County Conservation Futures. (using the very development rights on the land they purchased)

39.  PRINSEN showed up at plaintiff Gerald Foss's personal residence, without invitation, and when he was told again that the family was not interested in selling the property, PRINSEN became angry and verbally abusive. He was asked to leave the premises.

40. The plaintiffs partition action suit was dismissed but successful on appeal, Court of Appeals Division 1 2002 WL 31749399 (Wash.App.Div.1). And the case was remanded back to the Honorable Judge Dean Lum for redress on the issue of sale or partition of the property.

41. Honorable Judge Lum appointed referees to determine the best use of the property that would yield the most value for each owner. The referees obtained the services of land development expert R.W. Thorpe to report on the divisibility, best use, and overall value of the property. In doing so, R.W. Thorpe referred to King County DDES to determine what development restrictions were applicable to the property. These restrictions along with development requirements were used by Thorpe to determine the feasibility of partitioning of the property vs. sale for the court. Using King County development restrictions and other information Thorpe and Associates completed what they called the "Thorpe Report." The report provided a map including wetland types, buffers and building lots setback 600ft from the Shoreline of Shadow Lake. The report states;

> "The property was subject to complicated, expensive, critical area regulations and extensive buffer requirements from the shoreline of Shadow Lake."

42. Thorpe further concluded that the property was located in the King County Transportation Concurrency Red Zone. This "Red Zone" designation allowed for only one building site on the 42 acre "Woods" parcel and one building site on the 10 acre "Park" parcel. The Thorpe Report goes on to conclude that due to the development restrictions on both parcels, partition of the property was no longer an option.

43. On April 28, 2005 the "Woods" and "Park" properties were sold at public auction as ordered by the court.

44. The auction was held on the steps of the King County Courthouse located in downtown Seattle. There were two parties that announced themselves as bidders, the plaintiffs, and a person who identified himself as Conrad Liegal bidding for the Shadow Group.

45. Under the rules of the auction, for the purpose of bidding, the Plaintiffs were given credit for the eighty percent interest in the property they already owned, thus the plaintiffs would have to pay the remaining twenty percent of any winning bid.

46. The bidding opened for the "Woods" property at $575,000.00. The Plaintiffs and Conrad Liegal of the Shadow Group were the only two bidders. Several bids were exchanged by the two parties until the winning bid was submitted for $1,062,000.00 by Conrad Liegal from the Shadow Group.

47. The "Park" property was auctioned next, with the same two bidders. SHADOW'S bidder, CONRAD LIEGAL, bid back and forth against the plaintiffs, bidding up to $500,000.00 and stopping. The next bid was $500,001.00 by the plaintiffs. A new bid was made by a party who failed to make an agency disclosure statement but was known to the plaintiffs as CO-CONSPIRATOR D'ANNUNZIO, she bid $505,000.00 and several bids thereafter, the plaintiffs prevailed with the winning bid of $560,000.00.

48. Both Property sales spent the next six months in escrow and finally closed in September of 2005.

49. In June 2005, the plaintiffs requested that King County DDES reopen the file No. L99M006 for the "Park" portion of the testamentary division.

50. The Plaintiffs felt that a minimum of seven lots for the "Park" property were created when the application was originally submitted, as all of the "Park" owners had signed the request for separate lot recognition.

51. King County DDES engineers Raymond Florent and Mike Miens re-opened the application and it was dubbed, file no. L05M0039, formally file No. L99M006.

52. Mr. Florent and Mr. Miens approved the application. The Plaintiffs' prepared a Mylar map describing the seven parcels. Plaintiffs were told the division was sent to the recorder's office.

53. Several months went by and the Plaintiffs' had not received any contact from DDES despite their several letters requesting an update on the progress.  Chief Engineer Raymond Florent eventually contacted Scott Foss and made this statement;

> "I was directed by JOE MILES to call MAX PRINSEN, and told to explain to Max the details of your request."

54. On December 22nd 2005 defendant Joe Miles mailed a formal denial of the testamentary project, with a copy going to Max Prinsen.

### FIRST CAUSE OF ACTION

### CIVIL RICO

### Title 18, United States Code, Sections 1961 through 1968

55. All averments contained in this pleading are incorporated in their entirety as though fully set forth below.

56. The Racketeering Influenced and Corrupt Organizations (RICO) provisions are a chapter of the Organized Crime Control Act of 1970(OCCA) Pub. L. 91-452, Title IX, 84 Stat. 941, as amended, 18 U.S.C §§ 1961-1968 (1988 ed. and Supp. IV.)  Section 1962© prohibits any person associated with an enterprise from conducting the affairs of the organization through a pattern of racketeering activity and the Plaintiffs' herby claim that NAMED DEFENDANT RACKATEERS are in guilty of violating this statute through the predicate acts listed below and through an effect on interstate commerce.

57. **PREDICATE ACT 1- § 1956. Laundering of Monetary Instruments** (1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of

some form of unlawful activity, conducts or attempts to conduct such a financial

transaction which in fact involves the proceeds of specified unlawful activity— **B)**

knowing that the transaction is designed in whole or in part— **(i)** to conceal or disguise

the nature, the location, the source, the ownership, or the control of the proceeds of

specified unlawful activity;

58. In April of 2005, SHADOW, acting as an apparent agent for KCD (no actual authority to

bind), through an acquisition agency agreement, illegally purchased the Plaintiffs

property at public auction. The funds used to purchase plaintiffs "Woods" parcel, were

the proceeds of unlawful activity.  KCD, through public official, MAX PRINSEN, cannot

properly appropriate funds for KCD to bid at a public auction as they are bound by

Washington State acquisitions laws RCW 8.26.180, which states in part.

> "Before the initiation of negotiations for real property, the acquiring
> agency shall establish an amount which it believes to be just
> compensation therefore, and shall make a prompt offer to acquire the
> property for the full amount so established.  In no event shall such
> amount be less than the agency's approved appraisal of the fair market
> value of such property..."

59. NAMED DEFENDANT RACKETEERS knew that KCD was not able to properly

appropriate these funds based on RCW 8.26 180.  *B) knowing that the transaction is*

*designed in whole or in part— (i) to conceal or disguise the nature, the location, the*

*source, the ownership, or the control of the proceeds of specified unlawful activity;*

60. **PREDICATE ACT  2 Fraudulent Concealment-**Rather than complying with State law

by not participating in the auction of the plaintiffs property, DEFENDANT

RACKETEERS fraudulently conceal their true agency relationship in order to disguise

KCD as the source of the ownership or the control of funds. This is done to disguise or to

fraudulently conceal that the funds are proceeds of unlawful activity, misappropriation of

Civil Complaint for Damages                                    Foss *pro se*
                                                               22417 196th Ave Se
                              13                               Renton, WA 98058

funds. The bidding instructions for Conrad Leigal are quite clear in their attempt to fraudulently conceal the material facts of their agency, or the ownership of the proceeds that are used to bid on Plaintiffs property.  The bid instructions from Shadows Attorney Jean Bouffard, which were approved by KCD's attorney Eric Frimolt are clearly an attempt to conceal material facts from the plaintiffs. They state in part;

> "For strategic reasons, it is important that the other parties at the auction not know that you are bidding on SHADOW's behalf. Therefore, you should not have any personal contact with me or Max until the bidding on the "Woods" has concluded.  Of course, after that point, you can talk to me and/or Max regarding any administrative details for presentation of the cashier's check and the referees' acceptance of the bid. If circumstances dictate a change in these instructions, either Max or I will instruct you. "

61. NAMED DEFENDANT RACKETEER MAX PRINSEN and SHADOW fraudulently represent the authority of Shadow as a legitimate bidder. Lacking any real authority, Shadow, knowingly, is an apparent agent without actual authority. KCD and Shadows' agency agreement gives Shadow the authority to bind KCD on page 1 of the document and page 2 clearly states that Shadow has no authority to bind the State. KCD had an agency agreement with Shadow that was ambiguous and unclear for the purpose of concealing the identity of KCD as the purchaser.

62. KCD's agreement to have Shadow act as it's agent, does not circumvent the law as it applies to a special purpose district of the State. It is only an attempt to confuse and disguise the source and ownership of the funds to prevent the Plaintiffs knowledge that KCD did not have the legal authority to bid on Plaintiffs Property at Public Auction. In fact the SHADOW-KCD agreement of 4/27/2005 that authorizes SHADOW to act as KCD's Agent is illegal and fraudulent, as it gives SHADOW the authority to bind KCD,

Civil Complaint for Damages

14

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

which according to the Washington State Constitution *"no person or corporation shall have the authority to bind the State.*

63.    **PREDICATE ACT 3 § 1343. Fraud by wire, radio, or television-** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both;

NAMED DEFENDANT RACKETEER Max Prinsen reports fraudulently to news papers that he is working with the owners to purchase the property. This is an attempt to gain control of the property through Fraud.  The Fraudulent statements give PRINSEN and SHADOW the ability to apply for Grants.  Prinsen received a Federal Grant on the Plaintiffs property, received matching funds from King County and others based on the fraudulent statements that he was working with the owners to purchase the property.

64. **Predicate Act 4- RCW 9A.68.050 Trading in special influence..** (1) A person is guilty of trading in special influence if: (a) He offers, confers, or agrees to confer any pecuniary benefit upon another person pursuant to an agreement or understanding that such other person will offer or confer a benefit upon a public servant or procure another to do so with intent thereby to secure or attempt to secure a particular result in a particular matter; (2) Trading in special influence is a class C felony.

65. MAX PRINSEN through Shadow, created relationships with KCD, King County's LINDA HOLECEK, and CO-CONSPIRATOR D'ANNUNZIO. All of these relationships

were based on promises of loans, the payment of donations and for promises of receiving other things of value. D'ANNUNZIO donated $110,000 to SHADOW in 2001, SHADOW (MAX PRINSEN) received a promise from NAMED DEFENDANT RACKETEER LINDA HOLECEK for payment of conservation futures money (conservation futures money for the development rights on plaintiffs property) if the property was acquired. Shadow (MAX PRINSEN) promised KCD title to the property and repayment of the money for the purchase through grants that Shadow had already been approved for, in exchange for a "loan". KCD would be the "purchaser" while Shadow (MAX PRINSEN) would receive control or a "stewardship" of the property, King County's LINDA HOLECEK would receive a conservation easement and D'ANNUZIO would receive the benefit of KCD funds at the "public auction" and a position on the Board of Shadow. By October 24, 2006 all of these transactions were completed when King County paid $545,000.00 to KCD for the conservation easement that was originally promised to Shadow (MAX PRINSEN).

66. **Predicate Act 5- RCW 42.20.070 Misappropriation and falsification of accounts by public officer**. KCD, through NAMED DEFENDANT RACKETEERS unlawfully appropriates funds and gives the SHADOW (MAX PRINSEN) through the agency agreement, the authority to bind the State. These misappropriated funds are then "pooled" with the personal funds of NAMED DEFENDANT RACKETEERS, and the personal funds of CO-CONSPIRATOR D'ANNUNZIO for the purpose of bidding. State Funds were misappropriated and utilized by CO-CONSPIRATOR D'ANNUNZIO for her own personal benefit and the personal benefit of a public official, NAMED DEFENDANT RACKETEER MAX PRINSEN.  RCW 42.20.070 states in part;

"Every public officer, and every other person receiving money on behalf or for or on account of the people of the state or of any department of the state government or of any bureau or fund created by law in which the people are directly or indirectly interested, or for or on account of any county, city, town, or any school, diking, drainage, or irrigation district, who:

(1) Appropriates to his or her own use *or the use of any person* not entitled thereto,

without authority of law, any money so received by him or her as such officer or

otherwise;

D'Annunzios' benefit from State funds is also in violation of the Washington State

Constitution **(ARTICLE VIII SECTION 5- CREDIT NOT TO BE LOANED)**, The

State does not loan its credit for the benefit of any individuals.

67. **Predicate Act 6**-RCW 9A.68.060 **Commercial Bribery-**MAX PRINSEN, as the person

giving direction at the auction and CONRAD LIEGAL as the bidding agent for KCD,

both become a "Trusted Person" per RCW 9A.68.060 d)  "Trusted person" means:  ( i )

An agent, employee, or partner of another.  (ii) An administrator, executor**,** conservator**,**

guardian, receiver, or trustee of a person or an estate, or any other person acting in a

fiduciary capacity; (a) He or she offers, confers, or agrees to confer a pecuniary benefit

directly or indirectly upon a trusted person under a request, agreement, or understanding

that the trusted person will violate a duty of fidelity or trust arising from his or <u>her</u>

position as a trusted person;

The Agency agreement dated 4/27/2005 puts SHADOW (MAX PRINSEN) in the

category of a "Trusted Person" as defined by Washington State Law RCW 9A.68.060.

KCD, its board, and attorney know that SHADOW (MAX PRINSEN) cannot legally bind

the district. The agency agreement itself tries to fraudulently conceal this by stating on

page one that SHADOW (MAX PRINSEN) has the authority to acquire property and on

page 3 exhibit A. II. A  SHADOW has NO AUTHORITY to bind the KCD (the district)

to any contract or agreement for the purchase of the property.

68. NAMED DEFENDANT RACKETEERS refer to King County purchasing the plaintiffs

property in the following quote from the meeting minutes of the Rainier Audubon

Society in February of 2000;   also in attendance were RACKETEERS JOE MILES and

MAX PRINSEN.

> "Erin Wojewodzki Prinsen reported the formation of the Shadow Lake Bog
> Foundation to work on land purchase around Shadow Lake. They have applied
> for a 501.C3 status and have purchased a .56 acre piece of property adjoining
> the SE corner of their property through the land conservancy and Peggy Bill.
> They are working with King County towards having the county purchase the
> Foss Resort property for a biodiversity project."

69. The statements of Erin Wodjewoski-Prinsen about the purpose of formation of

SHADOW, show the beginning of the conspiracy and formation of an ***Association in
Fact Enterprise*** which has a ***Common Purpose*** as it is identified as one to acquire

property around the Shadow Lake Area, specifically that property owned by the

Plaintiffs, said acquisitions are achieved by DEFENDANT RACKETEERS, through a

***Pattern*** of ***Racketeering Activity.*** The following meeting minutes of KCD July 9, 2003

identifies the problems and funding issues that these NAMED DEFENDANT

RACKETEERS are facing and the reasons they attempt to circumvent the law through

RACKATEERING ACTIVITY, the meeting notes state;

> "The board was given an update on the ALEA grant. B. Reed said that the grant has
>
> been awarded to the District to facilitate the purchase of the bog at Shadow Lake, and
>
> S.H.A.D.O.W. is currently dealing with family politics around the sale of a 42-acre
>
> parcel that the grant funds will purchase. The parcel may go to auction before the
>
> District receives the grant money. Discussion ensued regarding the timing of the

Civil Complaint for Damages

18

receipts and what to do if the property is auctioned before cash is available. The board discussed the District loaning money to buy the property before the grant is received, however, there is another Conservation Futures grant that will be contributing to the purchase of the property. This grant has no connection to the Districts ALEA grant award, so the discussion centered on the role of the District as a possible lender of the Futures grant money.

 Vice Chair Scott Wallace said "that the District should not become a lender in this situation and that S.H.A.D.O.W. could take the grant award to a bank and get a loan against the promised funding. Staff had mentioned the situation to the Districts legal counsel, who said that lending the money was not a problem as long as the District received interest on the loan. The board decided that they were not comfortable lending on the Conservation Futures money to S.H.A.D.O.W., but that since the ALEA grant money would be coming to the District, fronting only the ALEA grant money to S.H.A.D.O.W. would be acceptable. The tricky part is that if S.H.A.D.O.W. does not get the cash from both grants at the same time, the purchase may not go through and the need for the grants will go away. Discussion ensued regarding the relationship of Prinsen to S.H.A.D.O.W. and the purchase of Shadow Lake Bog habitat."

70. **Predicate act 7- BANK FRAUD** Who ever knowingly excecutes, or attempts to execute, a scheme or artifice:

1.  To defraud a financial institution, or

2.  To obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $1,000,000 or imprisoned for not more than 30 years, or both.

Civil Complaint for Damages                    Foss *pro se*
                                               22417 196th Ave Se
                          19                   Renton, WA 98058

71. When Max get's a cashier's check for $1,062,000 in the name of King Conservation District, NAMED DEFENDANT RACKETEER MAX PRINSEN, SHADOW and KCD are committing **Bank Fraud** as the purpose under which the pretenses under which the funds are withdrawn are false and fraudulent.

72. "NAMED DEFENADANT RACKETEER" Max Prinsen using his position with Shadow Group to procure Federal Funds of $48,000 through a Grant from the Migratory Bird Conservation Commission and matching funds from King County and Cascade Land for a total gross of $171,000, on property that was not for sale . These funds were pooled with the funds of King Conservation District, and Max Prinsens' personal funds.

73. **Predicate Act-Hobbs Act- 18 U.S.C § 1951 (b) (2) Extortion Under Color of Official Right-**

**(2)** The term "extortion" means the obtaining **of** property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

A public official commits extortion under the color of official right if he uses the power and authority of his office in order to obtain money, property, or something of value from another to which neither that public official nor that government office has an official right. Extortion under color of official right means that a public official induced, obtained, accepted, or agreed to accept a payment to which he or she was not entitled , knowing that the payment was made in return for taking, withholding or influencing official acts. This benefit can be meant to be given to the public officer directly, or to a third party, who is not a public official, but who was acting in concert with the public official.

NAMED DEFENDANT RACKETEER MAX PRINSEN has committed extortion under the color of official right. PRINSEN through SHADOW accepted a donation in the amount of $110, 000 from CO-CONSPIRATOR D'ANNUNZIO in 2001. PRINSEN then receives a promise from NAMED DEFENDANT RACKETEER, LINDA HOLECEK for the payment of funds from conservation futures, if PRINSEN can acquire the Plaintiffs property.  PRINSEN secures funds from KCD on the bases of this promise, and these funds are used to benefit D'ANNUNZIO at public auction.  PRINSEN and his organization will receive a Stewardship of the property and PRINSEN will personally receive the benefit of protecting his own back yard any future development, as the Plaintiffs property was very near his personal residence. The property was acquired by NAMED DEFENDANT RACKETEERS and HOLECEK did pay $560,000.00 for a conservation easement, KCD did receive title to the property along with other grants that SHADOW had procured prior to KCD's involvement. D'ANNUNZIO received undue prejudice, as these events took place during the Plaintiffs partition action and recieved a prestigious position on the Board of Directors of SHADOW.

74.   **Predicate Act 8-§ 666. Theft or bribery concerning programs receiving Federal Funds**

**(a)** Whoever, if the circumstance described in subsection (b) of this section exists—

**(b)** The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. **(1)** being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—**(A)** embezzles, steals, obtains

by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

**(i)** is valued at $5,000 or more, and **(ii)** is owned by, or is under the care, custody, or control of such organization, government, or agency; or **(2)** corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

DEFENDANT RACKETEERS use FEDERAL FUNDS for the benefit of D'ANNUNZIO and MAX PRINSEN personally, in conjunction with funds which are misappropriated by KCD. The FEDERAL FUNDS were obtained through a grant for Migratory Bird Habitat in 2002 from the US Department of Fish and Wildlife. Plaintiffs believe that the Grant was obtained by DEFENDANT RACKETEERS while plaintiffs were still on title to the property, but to date the requests to Department of US Fish and Wildlife for information on the Grant have not been answered.

**(A)** *embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property* 1. NAMED DEFENDANT LINDA HOLECEK, allows the property rights to be converted from the Plaintiffs to MAX PRINSEN. By promising PRINSEN funding "if" he can acquire the property, HOLECEK converts part of ownership of the property to PRINSEN as he can now take the promise and leverage or mortgage it to obtain funds to purchase the property, which he did. PRINSEN brought this promise to KCD and a deal was created for KCD to provide the funds. KCD was not comfortable

Civil Complaint for Damages                    Foss *pro se*
                                               22417 196th Ave Se
                          22                   Renton, WA 98058

"lending" the funds to SHADOW so alternatively KCD would take title and SHADOW would receive a stewardship of the property.

75. In September 2001, DEFENDANT RACKETEER, MAX PRINSEN, organized an acquisition meeting on Plaintiffs property. Attending are eight individuals, including NAMED DEFENDANT RACKATEERS, MAX PRINSEN (KCD, SHADOW), LINDA HOLECEK (King County) BOB BRANDO (STATE DNR). There were no property owners present.

76. NAMED DEFENDANT RACKETEERS through an application from SHADOW, received approval for the ALEA Grant on plaintiffs' property and were also given a funding commitment on plaintiff's property by NAMED DEFENDANT RACKETEER HOLECEK of King County.  E-mails between HOLECEK and PRINSEN indicate that HOLECEK will approve funding for a conservation easement of approximately $720,000.00 (pending conservation appraisal) after PRINSEN acquires the property.  In his attempt to convince Plaintiffs to sell, PRINSEN fraudulently conceals the fact the he is using the plaintiffs own development rights to secure funding (DU's or Conservation Futures) from defendant LINDA HOLECEK. This promise effectively gives (MAX PRINSEN KCD/SHADOW) a form of ownership in the property that is nearly equal to that of the plaintiffs. This Conversion of Plaintiffs' ownership gives PRINSEN and co-conspirators the ability to leverage the plaintiffs' property and secure the funds for its very purchase.

77. King County, through its employee NAMED DEFENDANT RACKETEER, STEPHANIE WARDEN, applied illegal land use restrictions of the Growth Management Act inside the 200ft shoreline buffer of Shadow Lake, despite clarification of the issue by

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
23                    Renton, WA 98058

the legislature in 2003. This caused a land use restriction that was confusing, expensive and arbitrary. This restriction significantly impacted the plaintiffs' right and ability to partition in kind and the county was "indifferent" to the Plaintiffs rights. As a third party defendant, King County had all the information they needed, but chose to be indifferent to the rights of the Plaintiffs and indifferent to the clarification it received from the legislature in 2003.

78. In 2003, King County, through STEPHANIE WARDEN, placed a new development restriction of the transportation concurrency "red zone" on the plaintiffs' property illegally, as it is violates the Washington State Constitution (**ARTICLE XXVII SCHEDULE-SECTION 1 EXISTING RIGHTS, ACTIONS, AND CONTRACTS SAVED)**

79. The plaintiffs sought to realize their rights afforded by the Washington State Constitution to Partition in Kind and their right afforded by the Bill of Rights to inherit property. The plaintiffs bid at public auction together, using the shares they already owned, in an attempt to realize these rights.

80. The plaintiffs filed a request for public disclosure in October of 2005 in an attempt to learn the particulars on the purchase of their property. Several requests were made as there was much difficulty in getting any specific documents that answered the legal questions the plaintiffs still sought. Thousands of pages of documents were given and there was very little, it seemed that pertained to the purchase of Plaintiffs property. Documents were blacked out, other requests were denied. The plaintiffs specifically requested information relating to the legal basis used for the purchase of the property. This request is still unanswered.

81. The Defendants sole purpose in their conspiracy was to prevent the property from being divided, to preserve it, and in doing so, deprived the defendants of their rights under the Washington State Constitution (**ARICLE VIII SECTION 4, and SECTION 5**) and the United States Constitutions first, fifth and fourteen amendments. The Defendants willingly, knowingly and fraudulently conspired for the purpose of intentionally interfering with the Plaintiffs right to partition in kind, due process and equal protection under the law.

82. The plaintiffs make the following claims under 42 USC 1983 involving a civil conspiracy by defendants that acted as the vehicle for the interference with civil rights. The conspiracy was realized on October 18th of 2006, with the payment of $560,000.00 by King County to King Conservation District the defendants acted in concert for occurred over several years and included separate fraudulent concealment and misappropriation of public funds. Defendant's actions have lead to damages to the plaintiffs in their property and person, as such the plaintiffs' make the following claims for damages and relief.

## SECOND CAUSE OF ACTION

### 42 U.S.C. 1983

### Count 1 Substantive Due Process Violation

(Defendants Stephanie Warden and Joe Miles in their Individual capacities)

83. All of the averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

84. At all material times herein the plaintiffs possessed rights, immunities and privileges secured by the Constitution, including those of Due Process and Equal Protection of the Law

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

*"Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State subjects, or causes to be subjected, any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress"*

85. The plaintiffs have been violated in their rights under the fourteenth amendment and have been denied its guarantee of due process.

86. While acting under the color of state law, Defendant Stephanie Warden and Joe Miles of King County DDES knew, or should have known, that when there department illegally enforced the restrictions of the growth management act (GMA) inside the 200ft buffer regulated by the Shoreline Management Act (SMA), on the plaintiffs' property, that the plaintiffs Constitutional Rights of were being violated.

87. King County Governments Growth Management Act, included in the 2000 County comprehensive plan, placed illegal restrictions on the plaintiffs' property on the Shoreline of Shadow Lake. The legislature was very clear as to their intentions as they restated their intent in 2003 "that shorelines of the State of Washington were to be governed by the (shoreline management act)(SMA) and those outside the shorelines would be governed by the GMA (growth management act.)" Under the County's incorrectly imposed regulations on property would have the confusing task of complying with both the GMA and the SMA. **(Future wise v. Western Washington management hearings Bd. Wash., 2008)**

*"Landowners would spend a significant amount of time and money complying with the GMA and the SMA, until Ecology ultimately approves a new shoreline master plan. This contradicts the finality and certainty that is so important in land use cases"*

88. Setbacks on plaintiffs' property were so extreme and compliance issues like "Best Science" were so ambiguous and open to County interpretation, it was impossible to estimate the total cost.

89. Through the Plaintiffs partition action, the court investigated all potential development of the property, which included an in depth investigation of the regulations and ordinances currently enforced on the plaintiffs property.

90. Due to these regulations, the Thorpe Report concluded that division of the property would not be practical and that a public sale would be the only equitable way to end the tenancy.

91. These unjust regulations on plaintiffs' property left them as "Tenants in Common" with no prescription for the attainment of partition in kind that would be free of "undue prejudice" to the parties. The only remedy for the end of the tenancy would be to sell the property. While this may have resolved the tenancy it denied the Plaintiffs their Constitutional Rights protected by the FOURTEENTH AMENDMENT and was a violation of Substantive Due Process of Law, a deprivation of the right to partition under Washington State Law (RCW 7.52).

### COUNT 2 Equal Protection of the Law.

*"No state shall deprive any person of life, liberty, or property, without due process of law, nor deny any person within its jurisdiction the equal protection of the laws"*

92. All of the averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

93. At all material times herein the plaintiffs possessed rights, immunities and privileges secured by the Constitution, including those of Due Process and Equal Protection of the Law.

```
Civil Complaint for Damages                    Foss pro se
                                               22417 196th Ave Se
                    27                         Renton, WA 98058
```

94.  In 2002, While acting under the color of state law, Defendant STEPHANIE WARDEN and JOE MILES knew or should of known, that the enforcement of the GMA's Transportation Concurrency "Red Zone" "no development standard" while the Plaintiffs were in a court of redress attempting to divide the property was a violation of the Plaintiffs Constitutional rights of Due Process under the FOURTEENTH AMENDMENT and their rights to Equal Protection of the Law.

95.  Defendants WARDEN and MILES enforced these new restrictions on the plaintiffs' property illegally as the plaintiffs had already filed a partition Action cause no.00-2-06708-9 in King County Superior Court.

96.  These new illegally enforced regulations caused financial and personal harm to the Plaintiffs. The property value went down substantially as did the interest from developers who may have wanted to bid on the property at auction. The Critical Area and best science restrictions were so vague and open to interpretation that cost of developing the property would be extremely high and extremely hard to estimate an exact cost of development.

97.  The implementation of the "Red Zone" development restriction is a deprivation of the rights afforded to the Plaintiffs by the Washington State Constitution. The restriction itself became the moving factor that caused damage to the plaintiffs, as it extinguishes a fundamental attribute of ownership and it deprives the Plaintiffs the justice and fairness guaranteed by the Fifth and Fourteenth Amendment. The development restriction violates Article XXVII Section 1 of the *Washington State Constitution which states*;

   **ARTICLE XXVII SCHEDULE-SECTION 1 EXISTING RIGHTS, ACTIONS, AND CONTRACTS SAVED.-**

   *"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by a change in the form of government, but shall continue as if no such*

*change had taken place and all process which may have been issued under the*
*authority of the Territory of Washington previous to its admission into the Union*
*shall be as valid as if issued in the name of the State."*

98.  Defendant STEPHANIE WARDEN and JOE MILES' failure to give Plaintiffs equal
     protection of the law led to the unjust implementation of a land restriction on the
     plaintiffs' property. The ordinance was the determining factor in the outcome of the
     plaintiffs' partition in kind court action. It deprived them of the remedy intended,
     partition of the property. This action, again, affectively extinguishes the attribute of
     ownership afforded to the plaintiffs as Tenants in Common. The right to partition in kind
     is a fundamentally crucial right for tenants in common, as it is their only ability to
     express individual ownership and separation from another property owner.

99.  Plaintiffs argue that the property would have been divided amongst the heirs with
     the preclusion of this "Red Zone."  The partition statute provides for the unequal partition
     of land, without requiring a sale.  Even if other inequalities exist between the owners who
     seek to divide the property, the right to partition is protected by RCW 7.52.440 which
     states in the pertinent part;

     **RCW 7.52.440 "***[w]hen it appears that partition cannot be made equal between the*
     *parties according to their respective rights, without prejudice to the rights and interests*
     *of some of them, the court may adjudge compensation to be made by one party to another*
     *on account of the inequality of partition."*

100. The enforcement of the "Red Zone" illegally, on the plaintiffs' property, damaged the
     plaintiffs financially as the property was appraised prior to the Auction with the "Red
     Zone" regulation attached and it dramatically decreased the prospective and actual value
     of the property. This limited any potential bidders who would want to develop or invest

Civil Complaint for Damages                          Foss *pro se*
                                                     22417 196th Ave Se
                        29                           Renton, WA 98058

in the property. As it was, the only parties the property was of value to were the current

owners, KCD, Shadow and anyone wanting only one home on 40acres.

### COUNT 3- Substantive Due Process Violation

101. All of the averments contained in this pleading herein are incorporated in their
     entirety, as though fully set forth below.

102. At all material times herein the plaintiffs possessed rights, immunities and
     privileges secured by the Constitution, including those of Due Process and Equal
     Protection of the Law.

103.  Defendant JOE MILES knew or should have known that requiring his subordinate,
     Raymond Florent, to call MAX PRINSEN of SHADOW /KCD in reference to the
     plaintiffs application, was a violation of the plaintiffs right to Substantive Due Process of
     Law. MILES openly acted outside the scope of the requirements for plat approval when
     he required PRINSEN to be contacted. These actions by JOE MILES are arbitrary,
     outrageous and are behavior that "shocks the conscience." A reasonable person would
     know or should know that MAX PRINSEN would not be in favor of the development of
     a parcel of land next door to the "preserved parcel" he and his affiliates purchased at
     public auction. MAX PRINSEN and his affiliates are preservationists of Land in the
     Shadow Lake area and receive funding from King County in order to prevent
     development. This is an obvious conflict of interest.

104. Plaintiffs hereby way of this claim state "What other than ill intent against the Plaintiffs,
     or favoritism of an existing business relationship with Max Prinsen, would motivate JOE

Civil Complaint for Damages                          Foss *pro se*
                                                     22417 196th Ave Se
                          30                         Renton, WA 98058

MILES to impose such a requirement. A "public" officer is bound by his duty to serve the public interest, to realization of Equal Protection and Due Process of law. Defendant, JOE MILES let his personal interest and King County's affiliation with MAX PRINSEN take priority over the plaintiffs' constitutional rights and was a violation of substantive due process of law.

105. Plaintiffs refer to section 27. Of this complaint and quote from it;

"*Joe Miles requested a letter of withdrawal from Carl Foss*."…

Plaintiffs refer to section 26 of this complaint and quote from it; "*Joe Miles sent a letter to the family, placing a 90 day deadline or expiration on development approval if D'Annunzios signature was not obtained.*"

106. In June of 2006, plaintiffs re-applied for these lots on the basis that they were created under the original request. Defendant Joe Miles subjects Plaintiffs to the unusual and arbitrary approval requirements and in his official denial January 2006 he states' "You withdrew the previous application" and "this will be the final administrative review of this issue" Public records show in the file notes that it was defendant JOE MILES, himself, who requested the letter of withdrawal from Plaintiffs.

107. A request for a withdrawal of an application, that was set to expire if certain events did not take place, serves no purpose for the applicant, such withdraw could only be of benefit to the official so requesting it, as it is a limitation of the procedure that is inherit in plaintiffs rights to procedural due process of law. It is an intentional deprivation of any appeal process that may provide a true and just remedy for the applicants. (Plaintiffs)

**COUNT 4 and 5-Procedural and Substantive Due Process Violations**

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

31

108. All of the averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

109. At all material times herein the plaintiffs possessed rights, immunities and privileges secured by the Constitution, including those of Due Process and Equal Protection of the Law.

110. Defendant JOE MILES' request for a withdrawal creates a secondary count of Procedural and Substantive Due Process deprivations as the lots for the "Park" parcel had met all of the county requirements. All seven "park" parcel owners signed the request for separate lot recognition. This portion of the segregation was complete as these seven lots were "lot lined" or moved with the approval of JOE MILES and mapped together with preliminary lots on the "Woods" parcel which were also pre-approved pending only the signature of D'AANNUNZIO. Is it the county's position that the signature of D'ANNUNZIO is required for lot creation on parcels she has no legal interest in?

111. Requiring a signature of a party who has no legal ownership or interest in said parcel of land, as a precursor for approval, is an arbitrary and outrageous deprivation of the Plaintiffs rights of Procedural and Substantive due process of law and a violation of the FOURTEENTH AMENDMENT. Defendant JOE MILES' intentional acts to deprive Plaintiffs through his withdrawal request denies the plaintiffs any possibility of the procedural finality needed to contest a decision of the county and is in itself a denial of procedural due process. It is also a procedural due process violation on the basis that the separate lot recognition on the "Park" parcel had met all of the county requirements for approval.

### Count 6-Procedural Due Process Violation

Civil Complaint for Damages                    Foss *pro se*
                                               22417 196th Ave Se
                    32                         Renton, WA 98058

Plaintiffs argue that the even the 14 lot division should have been approved and that the county does not have the authority to require D'ANNUNZIO to sign the application. The application was signed by the Executors of the Estates, Gerald Foss, Carl Foss and done in accordance to the court probate. The county is not the authority on "IF" an applicant inherits under the laws of decent, there only purpose is for recognition of the lots through recording. The lots are created when a person who bequeathed them dies.

### THIRD CAUSE OF ACTION
### USC 42 1985(3) Civil Conspiracy

112. *"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."*

113. The Plaintiffs claim that the defendants actions constitute a civil conspiracy and are actionable under U.S.C 1985(3) The deprivation of the plaintiffs rights of equal protection of the laws or privileges and immunities under the law are concurrent with the four requirements set forth in: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or

of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

114. Defendants, while acting under the color of state law, conspired for the purpose of depriving the plaintiffs of equal protection of the laws and "equal privileges and immunities under the laws. The Plaintiffs fall into a class of persons as property owners. As such, they have certain rights in their ownership. Through there King County Court partition action, the plaintiffs were trying to express their rights as "tenants in common" to a partition of the property in kind. The defendants, in their affiliation with a party defendant in this action HOLLY D'ANNUNZIO, adversely affected the outcome of the case and caused damage to the plaintiffs. The Plaintiffs had inherent protected property rights as tenants in common, specifically, the right to partition in kind, the right to inherit, the right to a court of equity, the right to encumber, and the right to equal protection, immunities and privileges under the law.

115. The defendants conspired under a common goal and purpose of protecting the plaintiffs' property from any type of disturbance or development through a forced acquisition or condemnation. The plaintiffs desire to divide the property amongst themselves was contrary to defendants common goal of preservation, however the plaintiffs desire to divide through partition in kind was a property right afforded by Washington State law and was protected by the FIFTH and FOURTEENTH AMENDMENT of the constitution.

116. The 2002 acquisition meeting on the plaintiffs' property is undisputable evidence of this. As a class of persons or as property owners involved in a court proceeding to partition their property, the illegal zoning and development restrictions applied and enforced by

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
Renton, WA 98058

34

King County. Plaintiffs were *deprived of having and exercising any right or privilege guaranteed by the constitution.*

117. MAX PRINSEN, LINDA HOLECEK, JOE MILES and STEPHANIE WARDEN knew or should have known that promising funds, credit or favoritism to a Party involved in a judicial proceeding for the purpose of manipulating the outcome of said judicial proceeding was a deprivation of the Plaintiffs right to equal protection of the law, and a civil conspiracy under U.S.C § 42 1985.

118. The Plaintiffs as tenants in common, were bidding together at auction with the hope of finally realizing there right to Partition in Kind, a process that would grant each individual owner the right to finally inherit the property.

119. MAX PRINSEN representing SHADOW, KCD, King County, himself, and D'ANNUNZIO, misappropriated State and Federal funds under his control. He illegally pooled these misappropriated funds with his own money together with D'ANNUNZIO'S funds to bid at a public auction having no authority, as SHADOW, to bind the State of Washington by bidding on their behalf and had no authority to loan or use the States credit or the credit of King County or the credit of KCD for the benefit of D'ANNUNZIO. The Washington Constitution Sates;

> **ARTICLE VIII SECTION 5**- **CREDIT NOT TO BE LOANED** *The credit of the State shall not be given or loaned to, in any aid of, any individual, association, company or corporation.*
> **ATICLE VIII SECTION 7- CREDIT NOT TO BE LOANED**-*No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan it's money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.*

Civil Complaint for Damages

Foss *pro se*
22417 196th Ave Se
35                          Renton, WA 98058

120. Prinsens illegal agency agreement with KCD and Shadow group, his representatives concealment of SHADOW'S true agency, and his investment of his own personal    funds were used for the purpose of depriving the plaintiffs of their rights protected by the constitution, specifically the right to partition in kind, The right to inherit, encumber, and the right of equal protection under the law.

121. DEFENDANT LINDA HOLECEKS' promise of funds to MAX PRINSEN and D'ANNUNZIO, a party Defendant in Plaintiffs partition action, denied the Plaintiffs the right to "A court of Equity" and equal protection under the laws.

122. King County employees LINDA HOLECEK and JOE MILES involvement in providing information and involvement in the promise for funding towards the purchase of the Plaintiffs property while Plaintiffs were in King County Superior Court, was failure to provide equal protection under the law and a breach of the fiduciary duty owed to plaintiffs by King County including the right to a "Court of Equity" and the right to a court free of "Undue Prejudice."

123. Defendants LINDA HOLECEK and JOE MILES placed more value on the 'working business relationship' that they had developed SHADOW, than the value they placed on the Plaintiffs rights afforded to all by the Constitution and violated their duty of good faith.

**DAMAGES**

124. At all material times herein Plaintiffs possessed rights afforded to them by the Constitution of the United States and the Constitution of the State of Washington.

125.   Plaintiffs damages included, but were not limited to,

Civil Complaint for Damages                     Foss *pro se*
                                                22417 196th Ave Se
                                                Renton, WA 98058

A.  Devaluation of the property

B.  Damages resulting from illegal bids at Public Auction. Costs associated with Plaintiffs' Partition Action that was manipulated by the defendants in this case and an award of attorneys fees and costs relating to this suit.

C.  Plaintiffs' inability to realize the ownership and the subsequent ability to divide the property and make profits from the construction of residential houses and sale of individual parcels.

D.  Lost profits from working as the "Developers" of the property. Profits lost, including those from the work of a general contractor.

E.  Lost Profits of real estate commissions on the sale of the property and residences once developed.

F.  Plaintiffs future earnings affected by the loss of experience this development would have provided.

G.  Severe emotional distress due to intentional outrageous acts by the defendants causing emotional damages including loss of enjoyment of life.

H.  The right to enjoy what was bequeath by loved ones

I.  The costs of development

125.  All above damages in an amount to be proven at trial.

## PRAYER

Civil Complaint for Damages                              Foss *pro se*
                                                         22417 196th Ave Se
                                    37                   Renton, WA 98058

26.    WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as

follows;

    a.)    For all such general and special damages allowable under Federal Law including

          RICO .

    b.)    Those that shall be established at the time of the trial herein;

    c.)    For damages pursuant to 42 U.S.C. 1983 and 1985

          Including an award of punitive damages, costs and attorney's fees;

Civil Complaint for Damages                                    Foss *pro se*
                                                              22417 196th Ave Se
                              38                              Renton, WA 98058

01/1999 00:45    6095481797    MARGIE FUSS

including an award of punitive damages, costs and attorney's f

d.)    For such other and further relief as the Court deems just and co

circumstances of this case.

DATED this 21st day of DEC 2009

And Verified by individual Plaintiffs

Gerald Foss-Pro Se
20449 SE 180th St.
Maple Valley, WA 98038

Scott Foss-Pro Se
P.O. Box 1067
Maple Valley, WA 98038

Karen Foss-Pro Se
22417 196th Ave Se
Renton, WA 98058

Margaret Foss-Pro Se
18299 Sunland
Leavenworth, WA 98826

Civil

Civil Complaint for Damages