UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAREN FOSS, et al.,

Plaintiffs,

v.

KING COUNTY, a political subdivision of the State of Washington; et al.,

Defendants.

C09-1823Z

ORDER

THIS MATTER comes before the Court on three motions to dismiss, one brought by King Conservation District (the "Conservation District"), docket no. 10, and two brought by King County, Linda Holecek, Joe Miles, and Stephanie Warden (the "King County Defendants"), docket nos. 11 and 13. The remaining defendants, the S.H.A.D.O.W. Group, Save Habitat and Diversity of Wetlands, the Shadow Lake Bog Foundation, Max Prinsen, and Erin Wodjewoski Prinsen (the "SHADOW Defendants"), have not joined in any of these motions and have not separately moved for dismissal. Having reviewed all papers filed in support of and in opposition to each pending motion, the Court now enters this Order.

**Background**

Plaintiffs Gerald Foss, Karen Foss, Margaret Foss, and Scott Foss filed the complaint at issue on December 22, 2009, against the Conservation District, the King County Defendants, and the SHADOW Defendants. The complaint alleges causes of action under (i) the Civil Rights Act of 1871, 42 U.S.C. § 1983, (ii) the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), and (iii) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The claims involve two parcels of land located in King County, which plaintiffs denominate as the "Park" Property (approximately 10½ acres) and the "Woods" Property (roughly 42 acres), respectively. Complaint at ¶ 14 (docket no. 1). The properties are adjacent to each other and are situated along the shore of Shadow Lake. *Id.* Historically, the properties were owned by the Foss family, which operated a resort. *Id.* at ¶¶ 15-16. The properties passed from one generation to the next until 2005, when the properties were auctioned pursuant to a court order, *id.* at ¶ 43, and the Conservation District acquired the Woods Property for $1,062,000, *see id.* at ¶¶ 46 & 58. At the same auction, plaintiffs purchased the Park Property for $560,000. *Id.* at ¶ 47.

The order to auction the properties stemmed from a state court action initially seeking testamentary division of both parcels. Under Washington law, a subdivision of property must comply with certain stringent requirements before it may be recorded. *Toulouse v. Bd. of Comm'rs of Island County*, 89 Wn. App. 525, 528, 949 P.2d 829 (1998) (citing RCW 58.17.030). Divisions made by "testamentary provisions" or "the laws of descent," however, are exempt from these requirements. RCW 58.17.040(3); *see Telfer v. Bd. of County Comm'rs of San Juan County*, 71 Wn. App. 833, 862 P.2d 637 (1993) (holding that property held in tenancy in common, resulting from either intestacy or a will's residuary clause, may be divided into separate parcels without complying with platting requirements). In 1999, some of the owners of the properties at issue applied to King County for testamentary division of the parcels. *See Foss v. D'Annunzio*, 2002 WL 31749399 at *1

(Wash. Ct. App.). One of the owners of the Woods Property, Holly D'Annunzio, opposed the requested division, which would have resulted in thirteen lots on the Woods Property and one lot on the Park Property, because she thought it would impair the pristine quality of the Woods Property. *Id.* As a result, Ms. D'Annunzio refused to sign the application for testamentary division. In light of Ms. D'Annunzio's objections, at the request of Joe Miles, who is one of the King County Defendants, in October 2000, Carl Foss withdrew the application for testamentary division. *See* Complaint at ¶¶ 28 & 29.

Meanwhile, three of the plaintiffs in this case, Gerald, Karen, and Margaret Foss, along with Carl Foss, now deceased, Karen Tapper, and Gloria Foss (collectively, the "State Court Plaintiffs"), pursued a partition action in King County Superior Court. 2002 WL 31749399 at *1 n.2 (noting that Ms. Tapper was subsequently realigned as a defendant, alongside Ms. D'Annunzio and Artisanne Foss). During the course of the action, the State Court Plaintiffs conceded that the testamentary division exemption did not apply because not all of the co-tenants had obtained their interests in the properties via testamentary provisions or the laws of descent. *Id.* at *2. In light of the high cost of subdividing the properties in compliance with statutory requirements, the State Court Plaintiffs moved for a court-ordered sale of the properties. Ms. D'Annunzio opposed a sale, and the trial court dismissed the action without prejudice, concluding that "great prejudice," which is necessary to justify a forced sale, had not been demonstrated. *Id.* at *3. The Washington State Court of Appeals reversed the dismissal and remanded for further proceedings. *Id.* at *7. On remand, the trial court ordered the properties sold because neither parcel could be partitioned in light of "critical area regulations" and "extensive buffer requirements" relating to the shoreline of Shadow Lake. Complaint at ¶¶ 41 & 42.

At the auction, the winning bidder for the Woods Property was identified as the "Shadow Group." *Id.* at ¶ 46. Escrow closed in September 2005, approximately five months after the auction. *Id.* at ¶ 48. During the interim between the auction and the closing of

escrow, plaintiffs renewed their application for testamentary division of the Park Property, in which Ms. D'Annunzio had no interest, and as to which the owners' original request for partition had been unanimous. *Id.* at ¶¶ 49 & 50. In December 2005, Joe Miles issued a denial of the testamentary division. *Id.* at ¶ 54. In October 2006, King County paid $545,000 to the Conservation District for a conservation easement over the Woods Property. *Id.* at ¶ 65. The Conservation District and the King County Defendants now move to dismiss on grounds that the action is time-barred or otherwise fails to state a claim upon which relief may be granted.

**Discussion**

**A. Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *Twombly*, 550 U.S. at 570.

**B. Failure to Respond**

Although the responses to the three motions at issue purport to be filed on behalf of all plaintiffs, they are signed only by Scott Foss. Mr. Foss is not a member of the Washington

State Bar Association or of the bar of this Court, and he may not represent the other plaintiffs in this action. *See Wash. State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 57, 586 P.2d 870 (1978) ("The 'pro se' exceptions are quite limited and apply only if the layperson is acting *solely on his own behalf*." (emphasis added)). Thus, plaintiffs Gerald Foss, Karen Foss, and Margaret Foss are deemed not to have filed any opposition to the motions to dismiss. Their failure to respond constitutes a basis for dismissing their claims against the Conservation District and the King County Defendants, *see* Local Rule CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."), but the Court also concludes that the arguments Mr. Foss has attempted to make on their behalf lack merit.

**C. Civil Rights Claims**

Plaintiffs assert that their rights to substantive and procedural due process and to equal protection were violated during the application process for testamentary division and during the period when the King County Superior Court was considering, on remand, whether to order that the properties be sold at auction. Complaint at ¶¶ 83-111. Plaintiffs also allege that they were deprived of equal protection as a result of a conspiracy aimed at the class of persons who are property owners. *Id.* at ¶¶ 112-123. The King County Defendants and the Conservation District seek dismissal of these claims, brought under §§ 1983 and 1985(3), respectively, on the ground that they are time barred. The King County Defendants further contend that the § 1985(3) claim lacks merit because the statute does not protect the class of persons who are property owners.

The statute of limitations for actions under §§ 1983 and 1985(3) is three years. *See Rose v. Rinaldi*, 654 F.2d 546 (9th Cir. 1981). The limitations period commences when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *E.g.*, *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (a § 1983 claim accrues on the date of the alleged wrongful

conduct, *i.e.*, "the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful" (emphasis in original)). The Conservation District asserts that plaintiffs' claim accrued in April 2005, when the properties were auctioned, and that the limitations period expired in April 2008. The King County Defendants calculate the latest date on which this action might have been timely filed as sometime in October 2009, which was three years after King County paid the Conservation District for a conservation easement over the Woods Property.

Plaintiffs did not initiate suit until December 2009, and their §§ 1983 and 1985(3) claims are untimely. In response to the motions to dismiss, plaintiffs indicate that they did not know about the conservation easement until February 2007, Response at 2 (docket no. 17), and they reference "several thousand pages of public records" in which, in February 2007, they "happened to find" interagency notes concerning Joe Miles's request that Carl Foss withdraw the testamentary division application, Response at 3 (docket no. 18). Contrary to plaintiffs' apparent contention, however, February 2007 is not the commencement date for the statute of limitations. Plaintiffs' §§ 1983 and 1985(3) claims challenge the way in which their requests for testamentary division were handled, and this process was complete, at the latest, in December 2005, when their renewed application to partition the Parks Property was denied. Thus, plaintiffs' §§ 1983 and 1985(3) claims are one year too late.

In addition, with regard to their § 1985(3) claim, plaintiffs fail to demonstrate that they fall within a protected class. The Ku Klux Klan Act of 1871 was enacted to protect individuals from racially-motivated conspiracies to deprive them of their legally protected rights. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). In the years since its passage, the statute has been extended beyond race "only when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.'" *Id.* To pursue an action

under § 1985(3), a plaintiff must fall within a court-designated suspect or quasi-suspect class or a class that Congress, through legislation, has indicated requires special protection. *Id.* Plaintiffs cannot establish that the class of persons who are property owners constitutes a protected class. To the contrary, plaintiffs' § 1985(3) claim alleges, at most, a conspiracy "motivated by economic or commercial animus," which the statute does not reach. *See id.* at 1537 (quoting *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 838 (1983)). The Court therefore DISMISSES with prejudice plaintiffs' claims under §§ 1983 and 1985(3).

**D. RICO Claim**

Under RICO, a person employed by an enterprise engaged in interstate commerce may not conduct, or participate in the conduct of, such enterprise's affairs through "a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity means acts constituting certain crimes, including particular state law felonies and various specifically enumerated federal offenses. 18 U.S.C. § 1961(1). A pattern of racketeering activity requires at least two predicate acts that occurred within ten years of each other. 18 U.S.C. § 1961(5). Plaintiffs have identified nine possible predicate acts in which they allege one or more defendants have engaged: (i) laundering of monetary instruments; (ii) fraudulent concealment; (iii) fraud by wire, radio, or television; (iv) trading in special influence; (v) misappropriation and falsification of accounts by a public officer; (vi) commercial bribery; (vii) bank fraud; (viii) extortion under color of official right; and (ix) theft or bribery concerning programs receiving federal funds. *Id.* at ¶¶ 55-82.

Both the Conservation District and the King County Defendants contend that plaintiffs' RICO claim is time barred. The Conservation District further argues that plaintiffs' RICO claim fails as a matter of law because it is premised on the erroneous assertion that the Conservation District had no authority to purchase the Woods Property. The King County Defendants also point to deficiencies in plaintiffs' RICO claim, namely

failure to adequately plead an "enterprise," "conduct" of the enterprise's affairs by one or more of the King County Defendants, a "pattern" of racketeering activities, or facts implicating any of the King County Defendants in the alleged racketeering activities.

The statute of limitations for a civil RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). The civil RICO limitations period begins to run "when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). This "injury discovery rule" is disjunctive, meaning that the limitations period commences when the plaintiff has either actual or constructive notice of the injury at issue. *Id.* Even when a plaintiff and a defendant have a fiduciary relationship, constructive notice starts the four-year clock unless the plaintiff establishes "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Id.* at 1110. Both the Conservation District and the King County Defendants identify three different dates on which the limitations period might have commenced, namely (i) April 2005, when the properties were auctioned, (ii) September 2005, when escrow closed, and (iii) October 2005, when plaintiffs filed a public record disclosure request "in an attempt to learn the particulars on the purchase of their property," Complaint at ¶ 80.

Plaintiffs did not file suit until December 2009, over four years after any of the dates on which plaintiffs arguably had actual or constructive notice of their alleged injury. Plaintiffs seek to run the limitations period from either October 2006, when King County paid the Conservation District for the conservation easement, or February 2007, when plaintiffs allegedly learned of this transaction between King County and the Conservation District. The Court, however, is persuaded that plaintiffs' RICO claim is precluded by the four-year limitations period. Plaintiffs' RICO claim seeks redress for an alleged conspiracy "to prevent the property from being divided" and "to preserve it." Complaint at ¶ 81. Thus,

the injury underlying plaintiffs' RICO claim occurred when control over or title to the Woods Property passed from plaintiffs to the Conservation District, in either April 2005, when the auction concluded, or September 2005, when escrow closed. Plaintiffs had actual notice of the injury at issue on one or both of these dates. They had four years from those dates to investigate and bring their RICO claim, but they failed to diligently and timely assert their cause of action.

Moreover, plaintiffs' RICO claim against the Conservation District lacks merit because it relies upon the faulty premise that the provisions of RCW 8.26.180 applied to the purchase of the Woods Property. *See* Complaint at ¶ 58. RCW 8.26.180 sets forth policies guiding the acquisition of real property for public works programs through the exercise of eminent domain or in connection with a project receiving federal financial assistance. *See* RCW 8.26.020(8) (defining "acquiring agency"); *see also* RCW 8.26.010 (outlining the purposes and scope of RCW Chapter 8.26). RCW 8.26.180 requires an acquiring agency to establish an amount believed to constitute "just compensation" for the real property at issue and to make a prompt offer to obtain the property for that amount. RCW 8.26.180, however, creates "no right or liability," and it does "not affect the validity of any property acquisitions by purchase or condemnation." RCW 8.26.205.

The Woods Property was not acquired via condemnation proceedings or by eminent domain; it was purchased at auction. Plaintiffs make no contention that the Conservation District is an "acquiring agency" within the meaning of RCW 8.26.180. Indeed, the statute under which the Conservation District was organized expressly prohibits the Conservation District from obtaining property by way of condemnation. *See* RCW 89.08.220(5). Thus, RCW 8.26.180 did not govern the transaction pursuant to which the Conservation District bought the Woods Property, and noncompliance with the statute did not render the purchase a misappropriation of public funds. Plaintiffs' further allegations that the Conservation District engaged in RICO violations by accepting money from Ms. D'Annunzio and/or

others, or by furnishing funds to any of the SHADOW Defendants, are belied by the statutory provisions explicitly permitting such activities. *See* RCW 89.08.220(4)&(10).

Likewise, plaintiffs' RICO claim against the King County Defendants cannot withstand scrutiny. Plaintiffs contend that one or more of the King County Defendants were part of an "associated-in-fact" enterprise.[1] A group of individuals comprising an associated-in-fact enterprise must have a "common purpose," must be part of an "ongoing organization, formal or informal," and must "function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc). The "ongoing" inquiry asks whether the organization is "a vehicle for the commission of two or more predicate crimes," while the continuity requirement focuses on whether the challenged behavior was "'ongoing' rather than isolated activity." *Id.* at 552-53. In this case, plaintiffs have pleaded nothing more than "isolated activity," involving only one parcel of real property; they have offered no facts to indicate that the King County Defendants have, together with either the Conservation District or one or more of the SHADOW Defendants, engaged in similar behavior concerning other landowners or other properties. Although plaintiffs might, in theory, improve their complaint, plaintiffs have not requested leave to amend, and the Court concludes that, because the RICO claim is also time-barred, "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The Court therefore DISMISSES with prejudice the RICO claim against the Conservation District and the King County Defendants.

---

[1] To be clear, plaintiffs do not allege, pursuant to 18 U.S.C. § 1962(c), that individuals employed by King County conducted King County's own affairs through a pattern of racketeering activity; rather, plaintiffs accuse one or more of the King County Defendants of colluding with the Conservation District and/or one or more of the SHADOW Defendants to deprive plaintiffs of the Woods Property. Thus, plaintiffs' RICO claim relies on the following definition of enterprise: "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

**Conclusion**

For the foregoing reasons, the Court orders:

(1) The King County Defendants' motions to dismiss, docket nos. 11 and 13, are GRANTED;

(2) The Conservation District's motion to dismiss, docket no. 10, is GRANTED;

(3) Plaintiffs' claims against the King County Defendants and the Conservation District are DISMISSED with prejudice;

(4) Plaintiffs are directed to SHOW CAUSE by September 10, 2010, why the remaining RICO claim against the SHADOW Defendants should not be dismissed with prejudice as time barred; plaintiffs are reminded that each of them must either separately respond or sign any joint response to this Show Cause Order, and that one of them may not act on behalf of, or represent, the others because doing so would constitute the unauthorized practice of law;

(5) The SHADOW Defendants may, on or before September 17, 2010, file a reply to plaintiffs' response to this Show Cause Order; no other briefing shall be submitted absent further order of the Court; and

(6) The Clerk is directed to NOTE this Show Cause Order for September 17, 2010, and to send a copy of this Order to all counsel of record and to plaintiffs pro se.

IT IS SO ORDERED.

DATED this 10th day of August, 2010.

Thomas S. Zilly
United States District Judge